United States District Court
District of Massachusetts

```
                                   )
UNITED STATES for the use of       )
D.D.S. INDUSTRIES, INC.,           )
                                   )
        Plaintiff,                 )
                                   )   Civil Action No.
        v.                         )   16-12009-NMG
                                   )
NAUSET CONSTRUCTION CORPORATION,   )
TRAVELERS CASUALTY AND SURETY      )
COMPANY OF AMERICA, and BENHAM     )
DESIGN, LLC,                       )
                                   )
        Defendants.                )
                                   )
BENHAM DESIGN, LLC,                )
                                   )
        Third-Party Plaintiff,     )
                                   )
        v.                         )
                                   )
LEIDOS ENGINEERING, LLC,           )
                                   )
        Third-Party Defendant.     )
                                   )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of a Miller Act claim by the United States "for the use of D.D.S Industries, Inc." ("D.D.S. Industries" or "plaintiff") against a general contractor and its payment bond surety for services and materials provided on a federal construction project at the Camp Edwards Unit Training Equipment Site ("UTES") in Sandwich, Massachusetts. Plaintiff also asserts claims for breach of implied warranty and

-1-

misrepresentations against the engineer on the project as well as a claim for unfair or deceptive trade practices in violation of M.G.L. c. 93A against the general contractor and engineer. Before this Court is the third-party defendant's motion to dismiss the third-party complaint for improper service of process or, in the alternative, to sever and transfer the third-party claim to the United States District Court for the District of Delaware.

I. **Background**

   **A. Facts**

The government entered into a contract with defendant general contractor Nauset Construction Corporation ("Nauset") for maintenance, repair and alteration at the Camp Edwards UTES. Nauset and defendant Travelers Casualty and Surety Company of America ("Travelers"), as surety, executed a bond as required by the Miller Act, 40 U.S.C. § 3131 to secure the payment of labor and materials used in the construction project. Third-party defendant Leidos Engineering LLC ("Leidos" or "third-party defendant") was the project engineer and as such prepared certain specifications contained within the bid documents for the project. D.D.S. Industries is a heating, ventilation and air conditioning ("HVAC") subcontractor that entered into a subcontract with Nauset to provide labor and material for the HVAC system on the project. D.D.S. Industries based its sub-bid

on information provided by Leidos in the pre-bid project specifications.

After beginning work on the project, D.D.S. Industries discovered that Leidos's pre-bid specifications were "insufficient, inconsistent and incomplete". Those specifications required D.D.S. Industries to make significant revisions and modifications to the designs that led to project delays and additional costs. D.D.S. Industries claims that, on the basis of a novation agreement between Leidos and defendant/third-party plaintiff Benham Design, LLC ("Benham"), Benham is responsible for the project delays and additional costs caused by Leidos's faulty pre-bid specifications.

D.D.S. Industries partially completed the subcontract work but Nauset has refused to pay for certain work performed. D.D.S. Industries maintains that Nauset owes it $137,780 plus interest on late periodic and final payments and costs of collection. D.D.S. Industries also asserts various state law claims against Benham for breach of implied warranty, misrepresentation and unfair or deceptive trade practices stemming from Leidos's deficient pre-bid specifications upon which plaintiff relied.

**B. Procedural History**

In October, 2016, the government on behalf of D.D.S. Industries filed its original complaint against Nauset and Travelers. In January, 2018, plaintiff filed its second amended complaint adding claims against Leidos for alleged breach of implied warranty, misrepresentation and unfair or deceptive trade practices based on the pre-bid specifications. In February, 2018, Leidos notified plaintiff that Benham was the proper party to the lawsuit pursuant to the novation agreement between Leidos and Benham, whereupon, shortly thereafter, plaintiff filed its third amended complaint substituting Benham for Leidos and asserting the same state law claims.

In May, 2018, Benham filed its answer to the third amended complaint and a third-party complaint against Leidos for indemnification. Benham claims that in March, 2016, the Haskell Company ("Haskell") and Leidos and certain of its subsidiaries entered into two interrelated agreements in which Haskell acquired from Leidos its interest in the subsidiaries and certain assets. Under the terms of the first agreement, the equity purchase agreement, Leidos sold its interest in four subsidiaries, including Benham, to Haskell. In the second agreement, the asset purchase agreement, Haskell purchased certain assets, properties and rights from Leidos and agreed to assume certain, but not all, of Leidos's liabilities. Leidos

submits that the latter agreement also contains a forum-selection clause.

The asset purchase agreement identified the liabilities assumed by Haskell, which included not only those liabilities set forth on the closing balance sheet but also those to be performed after the closing under the assigned contracts or any breaches or violations of the assigned contracts before the closing. Benham submits that the claims asserted by D.D.S. Industries do not fall within either class of assumed liabilities because Leidos's misconduct with respect to the pre-bid specifications occurred before the agreements with Haskell. Benham submits that D.D.S. Industries's claims are not therefore assumed liabilities but rather are excluded liabilities under the terms of the purchase agreement.

Benham further argues that the equity purchase agreement provides that Leidos will defend, indemnify and hold harmless Haskell, its affiliates and their respective representatives from and against any losses resulting from or arising out of any excluded liability. Under the terms of the equity purchase agreement, "an affiliate" includes an entity that is controlled by Haskell and "a loss" includes judgments against Haskell or its affiliates. Benham is an entity controlled by Haskell. On the basis of the equity purchase and asset purchase agreements Benham maintains that Leidos must, therefore, indemnify Benham

against any judgment resulting from D.D.S. Industries's claims. Benham also submits that Leidos has refused to indemnify Benham and thus has breached its contractual obligation under the two agreements.

In June, 2018, Leidos filed a motion to dismiss the third-party complaint for improper service of process or, in the alternative, to sever and transfer the third-party claim to the District of Delaware.  That motion is the subject of this memorandum.

**II. Motion to Dismiss Third-Party Complaint for Improper Service of Process or, in the Alternative, to Sever and Transfer to the District of Delaware**

    **A. Motion to Dismiss for Improper Service**

In its motion to dismiss for improper service, Leidos alleges that Benham attempted to serve it by mailing the summons and complaint to the Leidos office receptionist who was not authorized to accept such service.  That method of service of process allegedly violates federal rules which permit service by delivering the summons and complaint to an officer, a managing or general agent or any other agent authorized to receive service of process or in accordance with the state law of the state where the district court is located or where service is made. Fed. R. Civ. P. 4(h), 4(e)(1).

The parties agree, however, that Leidos has since been properly served and that the only issue now before the Court is

Leidos's motion, in the alternative, to sever and transfer Benham's third-party claim. Accordingly, Leidos's motion to dismiss for improper service will be denied as moot.

**B. Legal Standard for Motion to Sever and Transfer**

A district court has the discretion to "strike [a] third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4); see also Acevedo-Garcia v. Monroig, 351 F.3d 547, 558 (1st Cir. 2003) (stating that the decision to sever claims "is a case management determination peculiarly within the discretion of the trial court" (internal quotation marks omitted) (quoting Gonzalez-Marin v. Equitable Life Assurance Soc'y, 845 F.2d 1140, 1145 (1st Cir. 1988))). In addition,

> [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

The United States Supreme Court has held that a forum-selection clause in a contract may be enforced by a motion to transfer under Section 1404(a) and

> [w]hen a defendant files such a motion . . . a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer.

Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49, 52 (2013).

-7-

Indeed, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases". Id. at 63 (alteration in original) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). A district court evaluating a motion to transfer based on a forum-selection clause "must deem the private-interest factors to weigh entirely in favor of the preselected forum". Id. at 64 (explaining that a court evaluating a motion to transfer based on a forum-selection clause may not consider private interest factors because the parties have waived any objections to the pre-selected forum).

In deciding whether to transfer a case based on a forum-selection clause, the district court may consider the public-interest factors which will defeat a transfer motion only in unusual cases. Id. Those factors include

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.

Id. at 62 n.6 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)). The burden of showing that the public-interest factors overwhelmingly disfavor the requested transfer rests on the nonmoving party. See id. at 67.

**C. Overview of the Parties' Arguments**

Leidos contends that the equity purchase agreement upon which Benham relies for its indemnification claim contains a valid and mandatory forum-selection clause requiring the parties to litigate any dispute arising out of that agreement in state or federal court in Delaware. Based on the Supreme Court's decision in Atlantic Marine, Leidos asserts that the forum-selection clause is obligatory and thus the third-party claim should be transferred to the District of Delaware. In support of its argument Leidos suggests that all of the public-interest factors weigh in favor of transfer and there are no exceptional circumstances to justify denying its motion. Specifically, Leidos avers that Delaware is the proper forum because both Benham and Leidos are limited liability companies organized under the laws of Delaware and the equity purchase agreement calls for application of Delaware law in resolving Benham's indemnification claim.

Benham rejoins that severance and transfer is inappropriate despite the forum-selection clause. Benham asserts that, as the moving party, Leidos has not met its burden of establishing that severance of the indemnification claim is appropriate nor has it addressed any of the factors a court must consider in deciding a motion to sever. Benham suggests those factors weigh against a severance because the indemnification claim arises out of the

same transaction or occurrence described in D.D.S. Industries's complaint and such a severance would not facilitate judicial economy but simply discourage settlement.

Finally, Benham contends that even if severance of the third-party claim is appropriate, transfer is not. It explains that neither the private-interest factors nor the public-interest factors weigh in favor of a transfer which would be antithetical to the policy of judicial efficiency because Leidos's third-party claim is so integrally related to the claims in the underlying complaint.

**D. Application**

Benham does not contest the validity or the mandate of the forum-selection clause in its contract with Leidos but only that Leidos has failed to satisfy its burden of demonstrating that <u>severance</u> of the claims is proper. Benham calls upon this Court to engage in a severance analysis separate and apart from the transfer analysis under § 1404(a). But the factors upon which Benham relies for denial of Leidos's motion to sever and transfer are essentially the private-interest factors that the Supreme Court in <u>Atlantic Marine</u> has specifically proscribed.

Other district courts have concluded that severance is appropriate when cases are transferred. See <u>Valspar Corp.</u> v. <u>E.I. DuPont de Nemours & Co.</u>, 15 F. Supp. 3d 928, 932 (D. Minn. 2014) (stating that "[i]f the Court were to conclude the

pertinent factors render transfer appropriate under § 1404(a), then severance, too, would be proper"); Paduano v. Express Scripts, Inc., 55 F. Supp. 3d 400, 431-32 (E.D.N.Y. 2014) (stating that in exercising their discretion to grant a severance motion, "courts typically consider the same general factors elucidating the § 1404(a) analysis" and thus will find that severance is proper if transfer is proper); Monje v. Spin Master, Inc., No. CV-09-1713, 2013 WL 6498073, at *4 (D. Ariz. Dec. 11, 2013) (noting that under the circumstances, "[s]everance is a necessary precursor to . . . transfer, and it is justified by the same reasoning").

This District Court finds that where, as here, a motion to transfer under § 1404(a) is warranted, there is no need for a separate severance analysis. Adopting the reasoning of Atlantic Marine, transfer is proper here because there is a valid forum-selection clause in the contract between Benham and Leidos. Contrary to Benham's contention, the Court may not consider private-interest factors because of that clause.

Moreover, Benham has not demonstrated that there are extraordinary public-interest factors that would disfavor transfer to the pre-selected forum. It relies instead upon the platitude of judicial efficiency to avoid severance and transfer of a case. See Pinkus v. Sirius XM Radio Inc., 255 F. Supp. 747, 751 (N.D. Ill. 2017) ("[B]ecause [c]onsiderations of judicial

economy alone do not permit [courts] to ignore a presumptively valid forum selection clause, a forum selection clause is enforceable even when invoked by a third-party defendant against a third-party plaintiff." (second and third alterations in original) (internal quotation marks omitted) (citations omitted)); Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc., No. 16-CV-00920-LB, 2016 WL 4259126, at *5 (N.D. Cal. Aug. 12, 2016) (explaining that the proposition that a court can always disregard a valid forum-selection clause on the basis of judicial efficiency concerns is inconsistent with Atlantic Marine); see also CR Assocs. L.P. v. Sparefoot, Inc., No. 17-10551-LTS, 2018 WL 988056, at *5 (D. Mass. Feb. 20, 2018) (finding that where "public factors . . . are largely neutral, th[e] case is not among the 'exceptional cases' where the forum selection clause does not control").

The public-interest factors weigh in favor of enforcing the valid forum-selection clause in the contract because the third-party indemnification claim will be governed by Delaware law. At the very least, the public-interest factors are neutral with respect to the appropriate forum for the third-party claim. Accordingly, Leidos's motion to sever and transfer the third-party claim to the District of Delaware will be allowed.

## ORDER

For the foregoing reasons, the motion of the third-party defendant, Leidos Engineering, LLC, to dismiss the third-party complaint or, in the alternative, to sever and transfer to the United States District Court for the District of Delaware (Docket No. 75) is

1) with respect to the motion to sever and transfer to the District of Delaware, **ALLOWED**, and

2) with respect to the motion to dismiss, **DENIED** as moot.

**So ordered.**

                                                                   _/s/_Nathaniel M. Gorton_____
                                                                     Nathaniel M. Gorton
                                                                     United States District Judge

Dated October 25, 2018